## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID CHRISTPHER COCHLIN,   )
            )
   Petitioner,     )
            )
v.           )  Case No. CIV-23-522-D
            )
KAMERON HARVANEK,    )
            )
   Respondent.    )

### ORDER

Before the Court is the Report and Recommendation issued by United States Magistrate Judge Maxfield pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. No. 35]. Judge Maxfield recommends denying Petitioner David Cochlin's application for a writ of habeas corpus under 28 U.S.C. § 2254 [Doc. No. 1].

Petitioner filed timely objections [Doc. No. 36]. The Court therefore makes a de novo determination of the portions of the report to which a specific objection was made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

For the reasons set forth herein, Petitioner's application for a writ of habeas corpus is denied; Petitioner's request for a Certificate of Appealability is denied.

### BACKGROUND

In support of the analysis below, the Court repeats much of Judge Maxfield's factual summary.

### I. Factual Summary

On December 15, 2017, Petitioner met his then-girlfriend, Tara Baker, and Ms.

1

Baker's roommate for dinner and drinks at a Sushi Bar. Petitioner and Ms. Baker left together, with Ms. Baker initially driving. At trial, Petitioner testified that after stopping at a gas station, Petitioner and Ms. Baker switched seats and Petitioner began driving.

On the way to Petitioner's residence, their vehicle, a Mercedes, crashed into the back of a Ford Ranger occupied by Sean Tucker and Luke Ross, who were travelling to Petitioner's home to visit Petitioner's son.

According to data obtained from the Mercedes's black box, the Mercedes was traveling at 149 miles per hour five seconds before the collision and 96 miles per hour when the collision occurred.

The Ford Ranger combusted. Both Mr. Tucker and Mr. Ross died at the scene. A medical examiner testified that Mr. Tucker's cause of death was smoke inhalation and thermal injuries; Mr. Ross's cause of death was blunt force trauma.

On the night of the collision, Curtis Yokley, a resident who lived nearby, heard a loud noise and saw a fire across the street, which he soon realized were two burning vehicles. The Ford Ranger was too engulfed in flames to approach, but only the hood of the Mercedes was on fire. Mr. Yokley found a man unresponsive in the driver's seat of the Mercedes. Mr. Yokley then opened the passenger door and found a woman, whom he helped out of the car after shaking her awake. Mr. Yokley testified that the woman appeared intoxicated because she slurred her speech and staggered.

When first responders arrived, Oklahoma City Police Officer Nickolas O'Bryant spoke with the woman, whom he identified as Tara Baker. Officer O'Bryant testified that Ms. Baker appeared under the influence because she slurred her speech, smelled of alcohol,

and admitted to having drank earlier in the evening. Ms. Baker stated that she had not been driving.

Corporal Charles Carpenter of the Oklahoma City Fire Department testified that the unresponsive man, later determined to be Petitioner, was "dead weight." Another firefighter then assisted in pulling Petitioner away from the fire. When Petitioner woke up, Corporal Carpenter stated that he was combative and, unprompted, said, "[s]he was driving. I wasn't. I wasn't driving."

Corporal Carpenter testified that while on the way to the hospital, Petitioner kept repeating that he wasn't driving. Corporal Carpenter also testified that, when a paramedic asked Petitioner if he had been drinking, Petitioner said "half a pint," though Corporal Carpenter could not remember the type of alcohol mentioned.

Paramedic Stuart Wegenka testified that Petitioner was belligerent and attempted to remove medical equipment on the way to the hospital. Wegenka also testified that Petitioner smelled of alcohol and admitted to drinking half a pint of vodka.

Officer O'Bryant followed the ambulance to the University of Oklahoma Medical Center, where Petitioner was placed in a trauma room. Registered Nurse Melissa Melton testified that Petitioner was at first agreeable and cooperative but then became combative and confused. Officer O'Bryant testified that Petitioner acted belligerently toward the staff and seemed intoxicated, smelling of alcohol and slurring his speech.

At 12:08 a.m., Nurse Melton conducted a "rainbow draw," which is a standard blood draw by which medical staff obtain a patient's blood for use in a trauma panel and relevant labs. Officer O'Bryant separately attempted to read Petitioner an implied consent

notification for a separate blood draw or breath test, which would then be used to test Petitioner's blood alcohol content. Petitioner repeatedly interrupted Officer O'Bryant and did not give his consent. Sergeant Jeff Sellers obtained a search warrant for the second blood draw, which was executed using a state blood kit.

Oklahoma State Bureau of Investigation criminalist Danielle Ross-Carr analyzed the blood obtained in both draws. She testified that the rainbow draw, conducted at 12:08 a.m., showed a blood ethyl alcohol content of .330. The blood from the State's blood kit, executed at 4:38 a.m., showed an ethyl alcohol content of .208.

Oklahoma City Police Officer David Roberts and Master Seargent Mark Sexton found a credit card held in Petitioner's name in the Mercedes. After executing a warrant, they obtained a receipt from the Sushi Bar showing that Petitioner's credit card was used to purchase nine alcoholic drinks that night—three of which were double vodka tonics.[1]

At trial, Petitioner testified that he had no drinks until he arrived at the Sushi Bar. He then had three double vodka tonics over two to three hours and did not feel intoxicated or unable to drive when he left the restaurant. He stated that the Mercedes accelerated to such high speeds because his right shoe—a snow boot called a "Moon Boot"—became wedged between the brake pedal and gas pedal, depressing the latter. Furthermore, he stated that he attempted to dislodge the boot with his hand and applied the brakes with his left foot, which were the last events he remembered prior to waking up in the hospital.

---

[1] The receipt also showed $40 worth of separately purchased vodka. An unopened bottle of Silver Star Vodka was found in the Mercedes after the collision.

## II.     Procedural History

The State of Oklahoma charged Petitioner in Canadian County District Court, Case No. CF-2018-53, with two counts of murder in the second degree, and/or in the alternative, two counts of manslaughter in the first degree.

### A. *Trial Counsel's Opening Statement*

Because Petitioner devotes much of his objections to Judge Maxfield's report based on trial counsel's opening statement, the Court provides relevant excerpts here. Specifically, trial counsel stated the following:

> "Tara Baker, who was Mr. Cochlin's longtime girlfriend had spent the night with him on Thursday night and they were by themselves. *She will be here in the courtroom and she'll testify and she'll tell you that she was with David*, David Cochlin, all the way up until about 2:00, 2:30 on the 15th.
>
> So she spent the night with him on the 14th. She was with him all the way up to about 2:30 in the afternoon on the 15th. *And she'll tell you* he consumed no alcohol and *she'll tell you* what all they were doing that day." (Emphasis added).
>
> Later, defense counsel also stated,
>
> "[W]e're going to introduce [Petitioner's] boots that he was wearing that night. And he had on these funny-looking weird boots that are called Moon boots. They have big heels and big soles and they're kind of bulky-looking.
>
> And that's what he was wear [*sic*] that night. Again, it's December. And as he notices he's going fast, he looks down and he notices – and he starts tugging on his foot and he notices that his foot has been trapped underneath the brake pedal on the Mercedes.
>
> With those boots being depressed and it's depressing his foot, and the way it's stuck, it's actually pressing the accelerator down.
>
> At first, he doesn't panic or anything. He's thinking it's not that big a deal, that he can pull his foot out. Well, it doesn't work.

So eventually he bends down and he's in the car – *and Tara will testify to all of this,* as well as Mr. Cochlin. He's attempting to – she thinks he has dropped his phone or something [and that's why he] is going on down in the floorboard…." (Emphasis added).

Despite trial counsel making multiple references to Ms. Baker testifying at trial, trial counsel did not call Ms. Baker to testify.

B.  *Procedural Posture*

After a four-day jury trial, the jury found Petitioner guilty of two counts of murder in the second degree. The trial judge sentenced Petitioner to life imprisonment on each count, to run concurrently.

Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA"). The OCCA affirmed Petitioner's conviction and sentence.

Petitioner later filed an Application for Post-Conviction Relief in the District Court of Canadian County. The court denied Petitioner's Application. On appeal, the OCCA affirmed.

III.    **The Report and Recommendation**

In the instant application, Petitioner alleges multiple grounds for relief based on ineffective assistance of counsel (which are enumerated in the footnote below).[2] Judge Maxfield analyzed each of Petitioner's grounds for relief and recommended that Petitioner's application for habeas relief be denied.

---

2

| Ground one - ineffective assistance of appellate counsel for failing to: | Ground two - ineffective assistance of trial counsel for failing to: |
|---|---|
| **I(a)** raise ineffective assistance of trial counsel due to an alleged referral relationship between trial and appellate counsel<br>(Petitioner also requests an evidentiary hearing on this issue) | **II(a)** call Tara Baker to testify despite multiple promises to do so |
| **I(b)** raise ineffective assistance of trial Counsel for trial counsel's failure to call Tara Baker to testify | **II(b)** to present an accurate depiction of Petitioner's foot being wedged between the brake pedal and gas pedal |
| **I(c)** raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the rainbow draw evidence at trial | **II(c)** to competently argue Petitioner did not act with a depraved mind |
| **I(d)** challenge the trial court's admission of the search warrant blood draw evidence | **II(d)** to renew an objection to the admission of the rainbow draw evidence |
|  | **II(e)** to undermine confidence in the result of the trial due to cumulative error |

## ANALYSIS

Petitioner objects to three of Judge Maxfield's findings. The Court addresses each in turn.

1. *Appellate Counsel's Failure to Raise Trial Counsel's Ineffectiveness – Ground I(b)*

Petitioner objects to Judge Maxfield's recommendation on Ground I(b) in Footnote 2 above—finding that appellate counsel was not ineffective in failing to raise the issue of trial counsel's effectiveness when deciding not to call Tara Baker to testify. Because this objection is predicated on a finding that trial counsel was also ineffective for the underlying decision (referenced as Ground II(a) in Footnote 2), the Court need not address the appeals-based claim unless and until the Court finds relief is warranted on the trial-based issue. *See Cargle v. Mullin*, 317 F.3d 1196, 1202-03 ("[I]f the issue is meritless, its omission [on appeal] will not constitute deficient performance."). Because the Court ultimately determines that Ground II(a) does not provide a basis for relief—*see infra* Subsection 3—neither does Ground I(b).

2. *An Alleged Referral Relationship Biasing Appellate Counsel's Performance – Ground I(a)*

Second, Petitioner objects to a statement Judge Maxfield made related to her recommendation on Ground I(a) in Footnote 2 above—that a referral relationship may have biased Petitioner's direct appeal and influenced appellate counsel to not raise the issue of trial counsel's effectiveness.[3] Specifically, Judge Maxfield stated, "Petitioner raised the

_____

[3] It is unclear if Petitioner objects to Judge Maxfield's underlying recommendation or one sentence in her report. *See* [Doc. No. 36, at p. 20-21].

issue on appeal to the OCCA, but as part of the Statement of Facts, not as a proposition of error." *See* Report [Doc. No. 35 at p. 18].

Petitioner argues that he did raise Ground I(a) as a proposition of error before the OCCA. He cites to portions of his postconviction appellate brief in which Petitioner argued that an evidentiary hearing would be necessary to determine the factual basis of his grounds for relief. *See* Objections [Doc. No. 36, at p. 21] (citing [Doc. No. 23-9, at p. 2 and 20-24]).[4]

Judge Maxfield found that Ground I(a) was "not cognizable in this federal habeas action" because the OCCA decided the issue based on state postconviction law. *See* Report [Doc. No. 35, at p. 18]). The Court agrees with Judge Maxfield. A review of the case's procedural posture demonstrates that the OCCA affirmed the state district court's denial of Petitioner's request for an evidentiary hearing on the issue of whether an improper referral relationship may have biassed appellate counsel's actions. *See* [Doc. No. 25-10, at p. 12]. In a federal habeas petition, "relief is unavailable when the error involves only the post-conviction procedures rather than the imposition of the conviction or sentence." *Graham v. White*, 101 F.4th 1199, 1205 (10th Cir. 2024). As Judge Maxfield quoted, "because the constitutional error [Petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim." Report [Doc. No. 35, at p. 18] (citing *Sellers v. Ward*, 135 F.3d 1333,

---

[4] *See also* Brief in Support of Habeas Relief [Doc. No. 18, at p. 55] (arguing before the Magistrate Judge that "[a]n evidentiary hearing will be required to understand the exact reasons why [ineffective assistance of trial counsel] was not alleged[.]").

1339 (10th Cir. 1998)).

To the extent Petitioner now asks for an evidentiary hearing based on § 2254(e)(2)(B), the Court finds no hearing is necessary.[5] An applicant for federal habeas relief qualifies for an evidentiary hearing only if the applicant can show that the "facts underlying [his] claim would be sufficient to establish by clear and convincing evidence that but for [ineffective assistance of counsel], no reasonable factfinder would have found the applicant guilty of the underlying offense."

Here, just as with Gound I(b), Ground I(a) is predicated on trial counsel's decision to not call Tara Baker. An evidentiary hearing is therefore only necessary if Ground II(a)—the failure to call Ms. Baker—provides a basis for relief. Because the Court ultimately decides that it does not—*see infra* Subsection 3—Petitioner cannot establish that the facts underlying his claim would be sufficient to foreclose a reasonable guilty verdict. An evidentiary hearing is therefore unnecessary.

### 3.   *The Failure to Call Tara Baker – Ground II(a)*

Petitioner's third, and final, basis for relief is Ground (II)(a) in Footnote 2 above—that trial counsel was ineffective by promising that Tara Baker would testify, and then failing to call her to do so.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, federal courts may grant habeas relief only if the state court's adjudication of a claim on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

---

[5] It is unclear based on Petitioner's objections if he now requests an evidentiary hearing. Out of an abundance of caution, the Court addresses the issue.

clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Petitioner challenges the OCCA's decision under both prongs of § 2254(d). The Court addresses each in turn.

i.    *Application of Clearly Established Federal Law*

A state-court decision is unreasonable and contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Plancarte v. Falk*, 632 F. App'x 945, 954 (10th Cir. 2015) (internal citations omitted).

An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 101 (emphases in original) (quotations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (quotations omitted).

In a case based on ineffective assistance of council, the clearly established federal law was set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[6] There, the

---

[6] The "pivotal question … is whether the state court's application of the *Strickland* standard was unreasonable," not "whether Defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

Supreme Court established a now-familiar two-pronged test: "First, the defendant must show that counsel's performance was deficient. ... Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. Importantly here, the issue of prejudice is determined not by "whether a court can be certain counsel's performance had no effect on the outcome," but by whether "it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (citing *Strickland*, 466 U.S. at 696).[7]

In this case, the OCCA held that "even assuming arguendo counsel's unfulfilled [promise to call Ms. Baker] amounted to deficient performance, Petitioner cannot show a reasonable probability that the outcome of the proceedings would have been different but for the alleged error given the particular facts and evidence presented at trial." [Doc. No. 25-10, at p. 9].

The OCCA's holding was not unreasonable. In the moments leading up to the crash, Petitioner's Mercedes was travelling at 149 mph. Over four hours later, Petitioner's blood alcohol content was still more than twice the legal driving limit. Multiple witnesses testified to Petitioner acting belligerently after waking up—one stated that he, unprompted, denied that he was the driver. As Judge Maxfield concluded in her recommendation, the "strength of the evidence regarding Petitioner's intoxication" and "the speed of the vehicle make it improbable that Baker's testimony would have changed the outcome…." Because

---

[7] The Court must use a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks omitted).

fairminded jurists could minimally disagree about the correctness of the state court's decision, habeas relief is precluded.[8]

In his objections, Petitioner argues that this case is analogous to *United States v. Holder*, 248 Fed. Appx. 863 (10th Cir. 2007). There, the Circuit Court upheld the district court's grant of habeas relief under *Strickland*. *Id.*

A review of *Holder*, however, demonstrates that the two cases are distinguishable. *Holder* involved a "quintessential swearing match" that pitted the defendant's testimony against that of the government's witness. *Id.* at 872. Meanwhile, defense counsel failed to investigate, or call, a third witness who was present at the scene of the crime and whose testimony "would have provided powerful corroborating evidence for [the defendant's version of events]." *Id*.

Here, it is true that Ms. Baker may have corroborated Defendant's moon-boot theory, testifying that she remembers seeing Petitioner reach for something on the vehicle floor in the moments leading up to the crash.[9] Even so, the instant case is dissimilar to *Holder*.[10] As described above, the government presented sufficient additional evidence to

---

[8] It is noted that the OCCA relied on *Strickland*'s prejudice prong and assumed, "arguendo," that counsel's performance was deficient, yet determined that "Petitioner cannot show a reasonable probability that the outcomes of the proceedings would have been different but for the alleged error given the particular facts and evidence presented at trial."

[9] Ms. Baker also may have testified that Petitioner did not drink before arriving at the Sushi Bar, but the extent to which such testimony would have militated against the evidence of Petitioner's intoxication at the time of the crash is highly questionable given the blood draws.

[10] Assuming Ms. Baker's testimony would have aided Petitioner is questionable. The Court must adopt a "deferential standard of review" toward "the defense attorney…." (*Burt*, 571 U.S. at 15 (internal quotation marks omitted)), and as the District Court of Canadian County noted, strategic reasons existed to not call Ms. Baker. *See* [Doc. No. 25-10, at

overcome such an account. Because analogous evidence was not present in *Holder*, *Holder* provides no guidance here.[11]

   ii.      *Determination of the Facts*

Petitioner objects to Judge Maxfield's recommendation that the OCCA did not unreasonably determine the facts of the case.

A "state-court decision unreasonably determines the facts if the state court plainly misapprehended or misstated the record in making its findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (internal quotation marks omitted). This "daunting standard" will be "satisfied in relatively few cases." *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011). That is because the state court's decision must be "*based on* an unreasonable determination of the facts." *Id.* (emphasis original) (internal citations omitted).

In its decision, the OCCA made three statements that Petitioner argues were unreasonable. First, the OCCA wrote,

> "[d]uring the defense's opening statement, counsel made two brief references to what he expected [Ms.] Baker would testify to at trial … that she was with Petitioner until about 2:00 or 2:30 on the afternoon of [] December 15, 2017; and [ ] that she saw Petitioner bend down toward the floor board before the crash." [Doc. No. 25-10, at p. 9].

Petitioner contends that the OCCA's summary is simply not true. Citing to the record, he

---

p. 7-8].
[11] The Court has also reviewed *Welch v. State*, Case No. F-2011-661 (Okla. Crim. App. March 27, 2009) (unpublished), cited by Petitioner, and finds it does not counsel a contrary result.

asserts that defense counsel made more than "two brief references."

Second, in a footnote, the OCCA pointed out that Ms. Baker "was not named as a witness in either [the] original or amended witness and exhibit lists filed by the defense before trial[.]" Therefore, according to the OCCA, her testimony must not have played an important part in defense counsel's strategy.

Petitioner contends that the OCCA's footnote was technically inaccurate. Although Ms. Baker was not listed among defense counsel's witnesses, she was listed as a witness by the state, and defense counsel represented in his pretrial witness list that he was prepared to call "[a]ll witnesses listed by [the State.]" Defense counsel could therefore have called Ms. Baker. Furthermore, Petitioner points out that the jury was not privy to the parties' witness lists, and any juror listening to defense counsel's opening statement would have assumed that Ms. Baker was going to testify on behalf of the defense.

Third, in the same footnote, the OCCA wrote,

> "[d]uring closing argument, [defense] counsel attempted to capitalize on the State's failure to present [Ms.] Baker's testimony, insinuating [that it was the] State [that] did not call her because her testimony would have been harmful to the prosecution." [Doc. No. 25-10, at p. 9 n.3].

Petitioner argues that, because the jury would have thought that Ms. Baker was going to testify on behalf of the defense, the decision to later construe Ms. Baker's absence at trial as the state's problem was inexplicable. Moreover, if defense counsel was correct in his closing argument, and Ms. Baker's testimony would have harmed the government, then why did defense counsel not call her?

Upon consideration of these alleged errors, the Court finds there is no need to hair

split about the state court's characterization of the trial. For the OCCA to have made an unreasonable determination of the facts, its ultimate decision to deny relief must have been "*based* on" a "material" misapprehension that "plainly" misstates the record. *Wood*, 907 F.3d at 189-90. None of Petitioner's objected-to findings plainly misstate the record or alter the OCCA's analysis. The OCCA denied Petitioner relief in part on a theory, accepted "arguendo," that defense counsel's performance *was* deficient. It then determined that no prejudice occurred. Such would be the case even if Petitioner is correct, and the OCCA failed to account for the other errors that Petitioner here assigns to his former attorney. Even so, "Petitioner [still] [could ]not show a reasonable probability that the outcome of the proceedings would have been different but for the alleged error[s] given the particular facts and evidence presented at trial." [Doc. No. 25-10, at p. 9].

As the Supreme Court has made clear, the standard for finding an unreasonable determination of the facts is "difficult to meet." *Harrington*, 562 U.S. at 102. Petitioner's characterization of the OCCA's account of his trial is based on non-dispositive, debatable minutia and a single footnote. It is, therefore, insufficient.

## CONCLUSION

Having conducted a *de novo* review of those portions of the Report and Recommendation [Doc. No. 35] to which Petitioner objects [Doc. No. 36], the Court finds those objections should be overruled and the Report should be **ADOPTED** in full.

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**. A separate judgment shall be entered.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to a petitioner. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, and in light of the overwhelming evidence presented at trial of Petitioner's guilt, the Court finds the requisite standard is not met in this case. Therefore, a COA is **DENIED**.

**IT IS SO ORDERED** this 11th day of July, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

17